GEORGIA,
Chatham Co.
FEB. 1810.

King vs. Cook.

*Minutes of Superior Court, letter G. p.* 261.

*Chambers, February* 17, 1810.

ROSWELL KING *vs.* WILLIAM COOK.

### NEW TRIAL.

By *Charlton*, Judge.

THIS was an action of debt brought for the nonperformance of an arbitration bond. The submission recites, "that sundry disputes and misunderstandings having arisen between the said *Roswell King* and *William Cook* respecting certain accounts." It then proceeds to refer those disputes and misunderstandings to the arbitration and awards of *Jonathan Fabian,* and *Edward Butler,* who are authorized to make "a final determination of all accounts and other matters respecting property of every nature whatever." If those arbitrators could not agree, they are "empowered to choose an umpire." At the trial an award was offered in evidence, which is in these words:

"Mr. *King* and Mr. *Cook,*

"Gentlemen,—It is our opinion, that Mr. *Cook's* children are entitled to four hundred dollars from the sale of lands to Mr. *Collins,* after deducting *John Cole's* account, as by Mr. *Cook's* engagement. Dec. 6, 1800.

(Signed)   *Jonathan Fabian, Edward Butler,* and
*Alexander Baille.*

The court permitted this award to be given as evidence to the jury; and the counsel for the defendant now move for a new trial upon the following grounds, viz.

1. The award is not between the parties submitting.

2. It is not certain.

3. It is not final.

4. It is not made by the arbitrators to whom it was referred.

5. It is not under seal.

6. It is not notified to defendant.

7. It is not an award of the matters in difference.

8. The verdict is not between the parties to the suit. The verdict is contrary to the charge of the court in matter of law.

I shall dispose of these grounds in the order in which they are stated.

1. Awards are not construed so strictly as they were formerly, and in Hawkins *vs.* Colddough, lord Mansfield declares, " against *critical niceties* in scanning awards made by judges of the party's own choosing in order to the determination of suits between them." 1 Burrow, p. —. Giving this award, therefore, a liberal and favourable construction, can it be considered as between the parties submitting? The disputes referred to in the submission *might* have existed between *King* and *Cook* in a variety of capacities, as individuals, as guardians, or as trustees; and when the award does not designate the points in dispute, but refers to *all* differences, it will certainly embrace all differences which were laid before the arbitrators; and the limits of so general a submission rendered unnecessary a specification of the matters, with which those differences were connected. The submission contemplates an adjustment of other things than a settlement of accounts between *King* and *Cook*, in their individual capacities; for, it expressly submits other matters, respecting property of *every nature* whatsoever. If these latter expressions were not contained in the award, I should doubt whether it relates to any other matter but a settlement of accounts between *Cook* and *King*, in their distinct and individual capacities, for, as it is said in the books, you cannot call in the aid of an averment matters *dehòrs*, to explain the meaning of the arbitrators, it must appear on the face of the

GEORGIA,
Chatham Co.
FEB. 1810.

King vs. Cook.

award. I can perceive nothing in the award, itself, therefore, which precluded a termination of disputes as they existed between *King* and *Cook*, as guardians of his children, or the children of his wife.

2. The certainty of an award is one of its indispensable and essential properties ; the uncertainty of this award, it is contended, is contained in these words, " after deducting Mr. *Cole's* account." It is supposed that these words put the controversy afloat again, for the nature or amount of *Cole's* account is not mentioned, and from the face of the award it does not appear, whether that account has been deducted by the arbitrators, or whether it was left to be ascertained by the future exposition of the parties themselves. At the trial I was of opinion, this uncertainty is fatal to the award, and so charged the jury ; but Mr. *Lawson* gave a different construction of it to the jury, for he said, that the terms, " after deducting," presupposed an investigation of *Cook's* engagement, (as it is termed in the award) and an ascertainment and deduction of *Cole's* account, by the arbitrators, conformably to that engagement.

Upon this construction the jury must have founded their verdict, as no other evidence was submitted to them. The jury was a special one, and sworn to try the case according to equity, and the opinion they entertained of the evidence. The uncertainty of this award, is a subject upon which there may be a variety of constructions and opinions. I expressed one, the jury another ; and this of itself, ingeniously, my brother *Davis* observes, was sufficient proof of its uncertainty. The award will admit of the construction given it by the jury, though the one expressed by the court was the most striking and obvious one. There is then the opinion of the court one way, that of the jury another, and in the support of the correctness of each many cogent reasons have been advanced. It is in general true, that a verdict against the charge of the court is a good ground for a new trial. But under our system of jurisprudence, a special jury are not bound by the strict rules of common law, but may mingle in

their determination all the established principles of equity, so far as they may be applicable, or analogous. This award would not bear the nice scrutinies of common law doctrines, but it may be conformable to equity and conscience. The decree of the special jury may mould itself to all the purposes which the justice of the case required, and it is laid down in the books, that where there is something upon which the jury have raised a presumption agreeably to all the purposes which the justice of the case required, or if the plaintiff be entitled to recover in conscience and equity, the court will not interfere in granting a new trial. 4 T. Rep. 468, Salk. 644. 648. 646. 116. 2 T. Reports, 4.

3. It is requisite, that the award be final, as that it should be certain, but if it is certain, it is generally final, and that ground has been gotten over in the previous investigation. If it could embrace the disputes between *King* and *Cook*, as guardians to his children, or wife's children, (and it appears that the broad expressions of the submission would admit of such a construction,) then it is final, according to the terms of the submission; and there is no hostility between it and the verdict.

4. Looking over the authorities, I have discovered much nicety of distinction as it relates to this point. In Bulst. 184, it is said, " that if a submission be to four, and the umpirage of J. S. the four, and J. S. may join in making the award, otherwise, if their power had been divided in the submission; as if it had been to the four, and if they could not agree, then to J. S." 1 Bac. Abr. in margin. In Lalnsby *vs.* Hodgson, 3 Burrow, 1474, this case in Bulst. is called by the court a mistake, an error of the reporter, at least, (continues the decision, (there could be no determination founded upon it. It is a distinction in words without any real difference in the sense or meaning. The case in Burrow is nearly in point to the present one, there the arbitrators joined in the umpirage, and the question was, whether it was vacated and rendered void by the arbitrators joining in it. The court (says the reporter,) were unanimous and clear, that this was

the umpirage of the umpire, only he was at liberty to take what advice or opinion, or assessors that he pleased. So, in this case, if a disagreement is supposed to have existed between the arbitrators, this would be considered therefore as the umpirage of *Baillee.* The arbitrators joining does not vitiate, and *è converso*, if it is denominated an award, the joining of the umpire does not avoid it, because he may be taken as accessor to the arbitrators, or his joining is surplusage.

The point is settled by the declaration of the court in Burrow, that the distinction in Bulstrade, was in words only, a mistake, an error of the reporter.

5. It has been repeatedly decided, that in this state a wax or wafer seal was not deemed a requisite to a deed, and upon the authority of these decisions, and of Dill *vs.* Dill, Dalton p. —, and a case in M'Intosh, Superior Court, I decided that a wax or wafer seal was not essential to the validity of a deed; that an ink seal was sufficient; and that a deed was constituted such by the language, not by the magic of wax.

The want of seals does not avoid this award, nor does the submission require a delivery under seal; if it had, the parties would have bound by their contract.

6. The award is directed to both parties to the submission. No evidence was advanced at the trial to prove, no notice to the defendant; a notice is therefore to be presumed, because the contrary does not appear, " *de non apparentibus, et de non existentibus, eadem est ratio.*"

7. This ground has been answered in my remarks on the first point.

8. This ground may be also considered as disposed of; but it may be more satisfactory to open it by a case or two from the authorities, and they say that an award may be beneficial to the parties, though a thing is awarded to be done to a stranger to the submission; as if the arbitrators award, that one of the parties should pay money to the servant of the other. 3 Leon, 63. N. Dyer, 242, vide 1 Bacon Abr. 146,

So, again if two brothers submit to arbitration, and one of them is awarded to pay so much money yearly to his mother, this is good, for the payment being to be made to his mother, shows it to be a benefit to him. Salk. 74. Upon the same kind of reasoning, payment to *Cook's* children is a benefit to him.

GEORGIA,
Chatham Co.
FEB. 1810.

King vs. Cook.

*Rule discharged.*

> *Davis* and *Berrien*, for plaintiff.
> *Lawson*, for defendant.